United States District Court
Southern District of Texas
**ENTERED**
August 05, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARJORIE OZAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:24-cv-01859** |
| | § | |
| **LUBRIZOL CORPORATION,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**MEMORANDUM & ORDER**

This is an employment discrimination and retaliation case. Plaintiff claims that Defendant terminated her employment due to race, age, and gender discrimination in violation of 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, and Tex. Labor Code § 21.001. She also alleges retaliation under the ADEA, Title VII, the Equal Pay Act, and Tex. Labor Code § 21.001 for reporting gender discrimination.

Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 37). On April 22, 2026, the Court held a hearing in this matter. After considering the briefing, parties' oral arguments, and all applicable law, the Court determines that the Motion for Summary Judgment must be **GRANTED**.

## I. BACKGROUND

Marjorie Ozan ("Ozan") is a sixty-two-year-old Black woman. For approximately sixteen years from 1991 to 2007, Ozan worked for DuPont's La Porte plant in various roles. She was terminated by DuPont for poor work performance; she did not disclose that she was fired when she applied to Lubrizol. ECF No. 49 at 4 n.14.

From September 2007 to January 2018, Ozan worked as a Production Operator for the

121 Unit in Lubrizol's Deer Park plant. Her responsibilities included operating and trouble-shooting the 121's four processing units; preparing those units and equipment for preventive maintenance and repair; training new operators; coordinating shutdown activities; and conducting monthly audits and inventories.

In January 2018, Lubrizol promoted Ozan to Plant Foreman in the Deer Park plant's 121/Poly units. This was a mid-level manager role. Ozan was responsible for training new hires and transfers, conducting unit and field audits, ensuring the units were properly staffed, and leading inventory and safety audits. In November/December 2019, Lubrizol made Ozan a Plant Foreman in the Deer Park plant's MMB/156 units, where she had the same responsibilities as in her previous Foreman position.

In 2018 and 2019, while in the 121/Poly units, Ozan alleges that she was subjected to gender discrimination by her immediate male supervisor, Malcolm Martin. He yelled at her privately and in front of other employees; he did not yell at any male employees. He also allegedly undermined her supervisory authority. In 2019 and 2020, Ozan reported Martin's gender discrimination to Human Resources officials. In 2022, Ozan reported the discrimination to A.J. Jones, an Operations Manager who was Ozan's second-line supervisor, and David Kayser, another Operations Manager. This was reported to Simona Dunn, a Senior Human Resources Manager. Dunn determined that the claims were unfounded and allegedly did not investigate the claims. Ozan then filed an Equal Employment Opportunity Commission ("EEOC") charge on January 5, 2023. On August 21, 2023, the EEOC dismissed the charge and issued a right-to-sue letter.

In 2020, Ozan's performance rating was "Meets Expectations – [minus]." In 2022 and 2023, Ozan's performance rating was "Meets Expectations." Ozan was the only Foreman to

receive a rating below Meets Expectations from 2020 and 2023. ECF No. 56 at 5. However, the 2020 performance rating was not considered during its restructuring.

In Fall 2023, Lubrizol retained an outside consulting company, Argo, to assess the current organization and recommend changes to standardize work and improve efficiency. ECF No. 37-4, Exh. D at Appendix 144. Argo recommended restructuring the organization and eliminating the Foreman role, which Ozan and twenty-eight others held. On February 2, 2024, Lubrizol conducted an assessment of its Deer Park plant workforce to evaluate employees' skills and capabilities to assist with the restructuring. Employees were rated based on information from their direct supervisors via the employees' 2023 performance evaluations and information from operation managers during a "ratings" meeting. A.J. Jones, Ozan's female Operations Manager, rated the foremen in Ozan's unit and gave Ozan the lowest rating.

On February 13, 2024, Lubrizol held a meeting to place employees into new positions within the restructured organization. The Foreman position was eliminated. Ms. Jones evaluated the employees in her unit based on her personal knowledge, experience, and judgment; Ms. Jones determined Ms. Ozan was either not qualified or less qualified than other employees for the open roles in Ms. Jones's units. Ms. Jones and Jason Vasquez, Ozan's direct supervisor, both identified weaknesses in technical knowledge and ability, operational competency, and process knowledge; these were all areas important for the new positions in the restructured organization. ECF No. 56 at 8. Therefore, Ozan's employment was terminated/separated on March 14, 2024. Ozan was one of eighteen employees throughout the Deer Park plant who were terminated. Plaintiff asserts that despite her diligent efforts to find substantially equivalent employment, she remains unemployed.

Parties dispute whether the restructuring can accurately be called a Reduction in Force

("RIF"). Defendant calls the restructuring an RIF because eighteen employees were terminated. Plaintiff responds that the overall employee headcount went down by only one. Defendant responds Plaintiff's argument is a red herring and explains that the employee numbers only stabilized after additional employees were hired in new roles in the months following the restructuring. This distinction impacts the standard for a *prima facie* case of discrimination. Because this Court will assume that Plaintiff establishes a *prima facie* case of discrimination, the Court need not resolve the question of what legal standard for a *prima facie* case should apply.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air*

*Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## III. ANALYSIS

### A. Equal Pay Act Discrimination Claim

Per Plaintiff's Response, "Ms. Ozan voluntarily dismisses her EPA discrimination claim but not her EPA retaliation." ECF No. 44 at 2 n.1. Plaintiff has therefore abandoned her EPA discrimination claim, and the Court **GRANTS** summary judgment to Defendant on Plaintiff's EPA discrimination claim.

### B. Retaliation Claims Under Title VII, the ADEA, and Tex. Labor Code § 21.001

A plaintiff making a claim of retaliation under Title VII, the ADEA, the TCHRA, and the EPA must establish that "but for" the alleged protected activity, an adverse employment action would not have occurred when it did. 842 U.S.C. § 2000e-3(a); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (Title VII); 29 U.S.C. § 623(d); *Holtzclaw v. DSC Commc'ms Corp.*, 255 F.3d 254, 259-60 (5th Cir. 2001) (ADEA); *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487-89, n. 2 (5th Cir. 2004) (Title VII and TCHRA); *Gober v. Frankel Fam. Tr.*, 537 F. App'x 518, 522 (5th Cir. 2013) (TCHRA); *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021) (EPA). To establish a *prima facie* case, the plaintiff must establish that: 1) she participated in an activity protected by the relevant statute; 2) her employer took an adverse employment action against her; and 3) a causal connection exists between the protected activity and the adverse employment action. *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001).

#### a. Retaliation Claim Under the ADEA

Plaintiff asserts an ADEA retaliation claim based on her January 5, 2023, EEOC charge.

However, this charge only made a discrimination claim based on sex discrimination. Therefore, it was not an activity protected by the ADEA, which protects against age discrimination. The Court **GRANTS** summary judgment to Defendant on Plaintiff's ADEA retaliation claim, because Plaintiff did not engage in a protected activity—her 2023 EEOC charge did not allege age discrimination.

#### b. Retaliation Claims under Title VII and Tex. Labor Code § 21.001

When temporal proximity is the only evidence of causation for a retaliation claim, the proximity must be "very close." *Feist v. La. Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 455 (5th Cir. 2013); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). More than fourteen months passed between Plaintiff's January 5, 2023, EEOC charge and her March 14, 2024, termination. Plaintiff presents no other evidence of causation. Defendant provides extensive evidence that Plaintiff's termination was due to the restructuring of the Deer Park plant. Additionally, Ms. Jones, the person who decided to let Ozan go, testified to having no prior knowledge of Plaintiff's EEOC charge.

Therefore, the Court **GRANTS** summary judgment to Defendant on Plaintiff's remaining retaliation claims. Plaintiff provides no evidence of a causal connection between her EEOC charge and her termination; the temporal proximity of fourteen months is insufficient to show causation.

### C. Discrimination Claims Under Title VII, the ADEA, § 1981, and Tex. Labor Code § 21.001

Where, as here, discrimination claims rely on indirect or circumstantial evidence, such claims are governed by the *McDonnell Douglas* framework. Under this framework, the plaintiff must first establish a *prima facie* case of discrimination: the plaintiff must show that she (1) is a

member of a protected group; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was treated less favorably than other similarly situated employees, or was replaced by a person who was not a member of her protected group. *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If the plaintiff establishes the *prima facie* case, the burden shifts to the employer to provide a "legitimate, nondiscriminatory reason" for its employment action. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142-43 (2000); *McCoy*, 492 F.3d at 557. The plaintiff must respond with evidence that shows the employer's proffered explanation to be mere pretext for discrimination. *Reeves*, 530 U.S. at 143.

As noted above, there is some dispute about whether the Lubrizol layoffs constituted a reduction-in-force or a restructuring, which in turn impacts which standard the Court would apply to determine if Plaintiff has established a *prima facie* case of discrimination. Also as noted above, the Court declines to resolve that question. Even assuming that Plaintiff establishes a *prima facie* case, she fails to present evidence that Defendant's legitimate reason for her termination is pretextual.

There is record evidence that Ms. Jones used a rating matrix that used input from direct supervisors, performance ratings, and Ms. Jones's personal knowledge and experience. Ms. Jones's evaluation of Ozan is consistent with Ozan's 2023 performance review. For example, Ozan's performance ratings were lower than the two other foremen in her unit. Ms. Jones and other managers identified these other foremen as having better technical skills and making more impactful contributions. Ms. Jones determined that the other two foremen "had been impactful contributors with Lubrizol for a longer period of time." ECF No. 37-6 at Appx. 223. Additionally, the Foreman from Ozan's unit with the highest rating was a Black fifty-four-year-

old man. He was the same race as Ozan and was only six years younger.

Admittedly, the primary record evidence for Defendant's legitimate, non-discriminatory reasoning comes from Ms. Jones's own deposition. However, this is the only direct evidence of the criteria for that decision. Additionally, contrary to Ozan's assertion, Ms. Jones's testimony is legitimate evidence of her own decision-making and should not be cast aside. ECF No. 50-1 at 6; ECF No. 56 at 6. It is the Plaintiff's burden to offer evidence that demonstrates that Ms. Jones's reasoning was pretextual.

As this Court has held, in the Fifth Circuit, "an employer's belief that an employee's performance is inadequate, even if that belief is incorrect, is a legitimate, nondiscriminatory reason and cannot establish the existence of a pretext for discrimination." *Taylor v. Tex. Southern Univ.*, 4:12-cv-01975, Memorandum & Order, Doc. 42 at 14 (S.D. Tex. Sept. 25, 2013) (Ellison, J.); *Lee v. Geithner*, 825 F.Supp.2d 852, 856 (S.D. Tex. 2011). Ozan's position of Foreman was entirely eliminated from Lubrizol. The record evidence shows that Ms. Jones determined that Ozan had performance gaps in key areas for the new, more technical positions available at the restructured plant. Ozan presents extensive argument about her qualifications based on her prior employment at DuPont. However, Ms. Jones did not consider employees' prior employment in making her restructuring decisions; further, Plaintiff was fired from DuPont for poor performance. This prior employment was more than a decade old at the time of Plaintiff's termination.

Plaintiff provides no evidence that creates a genuine issue of triable fact as to whether Lubrizol's reasons were pretextual. *Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 315 (5th Cir. 2015). Ozan presents unpersuasive comparator evidence that does not establish pretext.

For example, Ozan argues that Lubrizol retained numerous younger, male, and/or non-

Black employees in positions similar to Foreman. However, Plaintiff fails to identify anyone specific; there is not competent evidence of a single-trait comparator. Ozan's assertion that she had "clearly superior qualifications to most of the younger, male, non-Black employees" is conclusory. ECF No. 44 at 32.

Ozan does identify a number of new positions (Shift Leads, EHS Coordinators) that were given to employees with very different qualifications. For example, thirty-eight of fifty-one Shift Lead positions were given to former Production Operators, who were supervised by and reported to foremen like Ozan pre-restructuring. Ozan had previously worked as a Production Operator before being promoted to Foreman. Ozan uses this as evidence that she was "by any objective measure, more qualified for the Shift Lead position than those 38 employees." ECF No. 44 at 16. However, this seems more like evidence that the Shift Lead position was more analogous to the Production Operator position than anything else. If anything, it indicates that the new position was simply not of an equivalent level to Ozan's. In any case, these employees do not serve as comparators because they were not similarly situated. Defendant also responds that this position required hands-on operational experience that Ozan lacked, given that her most recent Foreman position was managerial/administrative. Those coming from the Production Operator role had much more recent operational experience.

Ozan also identifies seven Shift Lead positions given to former foremen. All seven were male and "substantially younger" than Ozan (they ranged from seven to twenty-three years younger), and six were non-Black. Ozan states that all seven employees' 2023 performance "was inferior to Ms. Ozan's" because their merit pay increases were lower. ECF No. 44 at 17. However, Defendant responds that such merit pay disparities were based not on better performance, but on a comparative ratio used by Human Resources that assigns raises within

bands for the purpose of decreasing pay disparities for employees within the same band. ECF No. 49 at 5. Ozan provides no other evidence that these employees were less qualified than she.

Essentially, Ozan's evidence boils down to the fact that she was the only Black female Foreman, and she was one of only two foremen (out of twenty-eight) terminated without being assigned a new position. Plaintiff's assertion that Ms. Jones's evaluation was arbitrary and standardless is conclusory. This is not enough. Plaintiff fails to provide evidence that creates a genuine issue of triable fact as to whether Defendant's legitimate reason is pretextual. Therefore, the Court **GRANTS** summary judgment to Defendant on Plaintiff's discrimination claims.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendant Lubrizol Corporation's Motion for Summary Judgment (ECF No. 37) must be **GRANTED**. The case is dismissed with prejudice.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 5th day of August, 2026.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE